UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| PHILLIP GREGORY SCHAUS,<br><br>          Plaintiff,<br><br>     vs.<br><br>MARTIN O'MALLEY, COMMISSIONER OF SOCIAL SECURITY;<br><br>          Defendant. | CIV. NO. 24-00186 LEK-RT |

**ORDER: GRANTING IN PART AND DENYING IN PART PLAINTIFF'S APPEAL; REVERSING THE ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING THE CASE FOR FURTHER PROCEEDINGS**

Plaintiff Phillip Gregory Schaus ("Plaintiff") filed his Complaint for Review of Social Security Disability Benefits Determination ("Complaint") on April 23, 2024, pursuant to Title 42 United States Code Section 405(g). [Dkt. no. 1.] Plaintiff appeals from Administrative Law Judge David Romeo's ("ALJ") July 10, 2023 Decision ("Appeal").[1] Plaintiff's Opening

_____

[1] The Decision, including the Notice of Decision – Unfavorable and the List of Exhibits, is available in the Administrative Record Dated May 21, 2024 ("AR") at 14-38. [AR, filed 7/3/24 (dkt. no. 11), Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable (dkt. no. 11-3) at PageID.45-68.] On July 10, 2023, Plaintiff requested review of the Decision. [Exh. 18B, AR at 184-85 (dkt. no. 11-5 at PageID.186-88).] By notice dated February 21, 2024, the Appeals Council denied Plaintiff's request for review. [Notice of Appeals Council Action ("AC Notice"), AR at 1-5 (dkt. no. 11-3 at PageID.32-36).] Thus, the ALJ's Decision constitutes the final decision of Defendant Martin O'Malley, Commissioner of
(. . . continued)

Brief was filed on August 2, 2024. [Dkt. no. 13.] The
Commissioner filed the Answering Brief on August 30, 2024, and
Plaintiff filed his Reply Brief on September 13, 2024. [Dkt.
nos. 15, 16.] The Court finds this matter suitable for
disposition without oral argument pursuant to Rule LR7.1(c) of
the Local Rules of Practice for the United States District Court
for the District of Hawaii ("Local Rules"). On November 13,
2024, an entering order was issued informing the parties of this
Court's ruling on the Appeal. [Dkt. no. 17.] The instant Order
supersedes that entering order.

   For the reasons set forth below, Plaintiff's Appeal is
granted in part and denied in part. The Appeal is granted
insofar as: this Court rules that the ALJ erred in rejecting
Plaintiff's statements about the extent and limiting effects of
his tinnitus symptoms; and this Court grants Plaintiff's request
for an award of attorney's fees and costs. The Appeal is denied
in all other respects. The matter is remanded to the ALJ for
further proceedings consistent with this Order.

<u>**BACKGROUND**</u>

   On October 25, 2021, Plaintiff protectively filed a
Title II application for disability and disability insurance
benefits, alleging he was disabled as of January 1, 2021.

---

Social Security ("the Commissioner"). [<u>Id.</u> at 1 (dkt. no. 11-3
at PageID.32).]

Plaintiff's claim was denied, initially and on reconsideration. On September 2, 2022, Plaintiff filed a written request for a hearing. At the June 12, 2023 hearing, the ALJ heard testimony from Plaintiff and Alissa A. Smith, M.S., C.R.C., an impartial vocational expert ("VE"). [Decision, AR at 17 (dkt. no. 11-3 at PageID.48).]

Plaintiff testified that he had been working for Boston Consulting for approximately nine or ten months when he suffered an infection.[2] He was prescribed two rounds of moxifloxacin, a fluoroquinolone class antibiotic. During the second round of the antibiotic, Plaintiff was admitted to the emergency room with symptoms that suggested he was having a stroke. After a stroke was ruled out, multiple sclerosis was then suspected, but it was later ruled out. See Social Security Administration Office of Disability Adjudication and Review Transcript of 6/12/24 hearing ("Hrg. Trans."), AR at 49-50 (dkt. no. 11-3 at PageID.80-81). Plaintiff testified that he stopped

---

[2] It is unclear exactly when Plaintiff suffered the infection. According to Plaintiff's wage information, he was working full-time for the Boston Consulting Group in Massachusetts during the fourth quarter of 2020, and he obtained some wages from Boston Consulting Group in the first quarter of 2021 and the first quarter of 2022, but he was also collecting unemployment in Seattle, Washington during 2022. See Exh. 5D, AR at 202 (dkt. no. 11-6 at PageID.236) (New Hire Quarter Wage/Unemployment inquiry, dated 1/10/23). At the time of the hearing, Plaintiff was living with his parents in Captain Cook, Hawai`i. [Hrg. Trans., AR at 45-46 (dkt. no. 11-3 at PageID.76-77).]

working at a subsequent job with Volt Consulting Group because he "had unexplained, very severe nerve symptoms that could be explained by" a reaction to the moxifloxacin. [Id. at 50 (dkt. no. 11-3 at PageID.81).]

At the time of the June 12, 2023 hearing, Plaintiff was still experiencing "very, very, very severe, loud, debilitating tinnitus" in both ears, which prevented him from working. [Id.] The sound was a "piercing, metallic, . . . screeching sound" that is "so incredibly loud that [Plaintiff] can hear it over almost anything." [Id. at 51-52 (dkt. no. 11-3 at PageID.82-83).] According to Plaintiff, he experienced the severe tinnitus "24/7 for the last three years." [Id. at 51 (dkt. no. 11-3 at PageID.82).] The tinnitus prevents him from sleeping, and the lack of adequate sleep exacerbates the tinnitus. [Id.] Plaintiff's tinnitus is also aggravated by stress and certain sounds. Plaintiff has somatic tinnitus and anxiety, both of which cause neck tension. [Id. at 55-56 (dkt. no. 11-3 at PageID.86-87).]

Plaintiff manages the tinnitus symptoms with sound therapy devices that are intended to cover up the tinnitus sound by matching the pitch of the sound. Plaintiff testified that he uses the devices twenty-four hours a day to allow him to function at a minimum level. [Id. at 51-52 (dkt. no. 11-3 at PageID.82-83).] He testified that, because he needs so many

4

sound therapy devices for stabilization, he is unable to carry them with him if he leaves home. As much as possible, Plaintiff tries to limit the number of times that he leaves his home. [Id. at 47 (dkt. no. 11-3 at PageID.78).] He only drives to his doctor's office, which is nine or ten miles from his home, for appointments approximately once a week. Most of his appointments are telehealth appointments. [Id. at 46-47 (dkt. no. 11-3 at PageID.77-78).]

Plaintiff also sees a psychologist and a talk therapist. Plaintiff wears a watch that vibrates to calm his nervous system, and he wears hearing aids that play white noise. [Id. at 52-53 (dkt. no. 11-3 at PageID.83-84).] But, "because [Plaintiff's] tinnitus is so severe, [the hearing aids] can't really cover it. It's just like a band aid." [Id. at 53 (dkt. no. 11-3 at PageID.84).] Plaintiff also takes medication that "slightly dampens the effect of tinnitus, but it doesn't fix it in itself." [Id. at 54 (dkt. no. 11-3 at PageID.85).] The side effects of the medication include fatigue and drowsiness. [Id.]

According to Plaintiff, his ability to hear sounds in the normal frequency range is "arguably average," but he suffered high frequency hearing loss, which he asserts is common among people that have tinnitus caused by a drug reaction. [Id. at 53 (dkt. no. 11-3 at PageID.84).] In addition, sometimes "the tinnitus is so loud that it covers [certain sounds] up, and [he

5

does not] hear them at all." [Id. at 54 (dkt. no. 11-3 at PageID.85).] According to Plaintiff, audiologists use a Tinnitus Handicap Index to assess how debilitating someone's tinnitus is, and his score is 93 or 94 out of 100, "which is considered catastrophic" and "un-functionable." [Id. at 61 (dkt. no. 11-3 at PageID.92).]

Plaintiff testified that he is "very depressed." [Id. at 57 (dkt. no. 11-3 at PageID.88).] Plaintiff admitted having suicidal ideations, and he described one "very close call with self-harm" in March 2021, after which his parents forced him to move in with them. [Id. at 52 (dkt. no. 11-3 at PageID.83).] Later in the hearing before the ALJ, Plaintiff stated he "had suicide attempts." [Id. at 61 (dkt. no. 11-3 at PageID.92).] Plaintiff admitted that he suffered from anxiety even before he developed tinnitus, and he has been diagnosed with obsessive-compulsive disorder. [Id. at 57-58 (dkt. no. 11-3 at PageID.88-89).] He testified that he is "not social," does not leave his house, and does not stay in contact with many of his family and friends. [Id. at 61 (dkt. no. 11-3 at PageID.92).]

According to Plaintiff, at times, the tinnitus is so severe that it drives him into a manic state. Plaintiff will attempt to distract himself with eating or chewing because the crunching sound that those activities make can cover the tinnitus sound. If Plaintiff feels a panic attack beginning, he

will take a hot bath to distract himself. [Id. at 53 (dkt. no. 11-3 at PageID.84).] Plaintiff testified that, on average, he suffers from a few panic attacks a week, and they generally last for "[a] few hours at a time." [Id. at 58 (dkt. no. 11-3 at PageID.89).]

Plaintiff testified that, on some days, he has "to will [him]self out of bed because of the depression [he is] in." [Id. at 55 (dkt. no. 11-3 at PageID.86).] He spends most of his days doing research for news about tinnitus cures or developments in treating drug reactions. Other than that, Plaintiff spends his day engaging in coping or soothing behaviors to deal with his tinnitus symptoms. [Id.] Plaintiff estimates that he can pay attention to a task for thirty to forty-five minutes at a time before his tinnitus symptoms get so bad that he needs to stop and engage in his soothing behaviors. [Id. at 55-56 (dkt. no. 11-3 at PageID.86-87).] Plaintiff's soothing behaviors, such as mindfulness techniques or a bath, "can take hours, and sometimes if [he is] in a tinnitus flare, [he] may not stop that soothing behavior until like the end of the day[.]" [Id. at 56 (dkt. no. 11-3 at PageID.87).] His attention span is approximately the same when he is engaged in a leisure activity like watching television. [Id.]

In the early stages after the onset of Plaintiff's tinnitus, he tried to negotiate with his employer to continue

"working at 50 percent capacity, and they said it was a
nonstarter." [Id. at 59-60 (dkt. no. 11-3 at PageID.90-91).]
Plaintiff testified that he would have to play his pitch-match
sound therapy on an external device at work for it to be
effective and that playing the sound on headphones would not be
effective. [Id. at 60 (dkt. no. 11-3 at PageID.91).] When he
attempted to discuss the issue with his employer, the employer
instructed him to use earbuds. [Id.]

        The VE testified that there were three occupations,
all of which exist in significant numbers in the national
economy, that a hypothetical person, with the limitations that
the ALJ ultimately included in Plaintiff's residual functional
capacity ("RFC"), could perform – automobile detailer, cart
attendant, and lab equipment cleaner. See id. at 64 (dkt.
no. 11-3 at PageID.95). The ALJ's second hypothetical included
the limitation that the individual would be off-task for more
than twenty percent of the workday because of an inability to
maintain focus, attention, and concentration, and the VE
responded that the hypothetical individual would be precluded
from all competitive work. [Id. at 64-65 (dkt. no. 11-3 at
PageID.95-96).] Similarly, in the third hypothetical, the VE
testified that an individual who would be absent more than four
days per month because of anxiety and depression would be
precluded from all competitive work. [Id. at 65 (dkt. no. 5-3 at

PageID.96).] Further, in the fourth hypothetical, the VE
testified that, if the individual had to be reminded every
thirty minutes to remain on task and needed occasional
supervision to do his job, the individual would be precluded
from competitive employment. [Id.]

      The following exchange occurred during the examination
of the VE by Plaintiff's counsel:

>     Q    . . . if someone needed an at least 20-
> minute break every 45 minutes, sort of apart from
> the off task analysis, would that person be able
> to maintain competitive employment, sort of as an
> accommodation?
>
>     A    No, they would not be.
>
>     Q    Okay.
>
>     A    Yeah, that would be an accommodation.
> Yes.
>
>     Q    And if someone were required to play
> outside noise at their or audible noise from a
> device at their workstation, at at least a
> moderate noise level, would that person be able
> to maintain employment, or would that be require
> an accommodation as well?
>
>     A    I believe that would be an
> accommodation in the workplace.

[Id. at 66 (dkt. no. 11-3 at PageID.97).]

      In the Decision, the ALJ found that Plaintiff was
insured, for purposes of the Social Security Act, through
September 30, 2026. [Decision, AR at 19 (dkt. no. 11-3 at
PageID.50).] At step one of the five-step sequential analysis to

determine whether a claimant is disabled, the ALJ found that
Plaintiff had not engaged in substantial gainful employment
since January 1, 2021, the alleged onset date. [Id.]

At step two, the ALJ found that Plaintiff had the
following severe impairments: "tinnitus; depression; peripheral
neuropathy; mild degenerative disc disease of the cervical
spine; shoulder impairment; somatic symptom and related
disorder; and anxiety disorder." [Id. at 20 (dkt. no. 11-3 at
PageID.51) (citing 20 CFR 404.1520(c)).]

At step three, the ALJ found that none of Plaintiff's
impairments, either individually or in combination, met or
equaled one of the impairments listed in Title 20 Code of
Federal Regulations Part 404, Subpart P, Appendix 1. [Id.
(citing 20 CFR 404.1520(d), 404.1525, 404.1526).]

In the step four analysis, the ALJ found that
Plaintiff had the RFC

> to perform medium work as defined in 20 CFR
> 404.1567(c) with the following additional
> restrictions: no ropes, ladders, scaffolds; no
> exposure to hazards or heights; no concentrated
> exposure vibration; can tolerate a moderate noise
> intensity level as defined in the [Dictionary of
> Occupational Titles]/[Selected Characteristics of
> Occupations defined in the Revised Dictionary of
> Occupational Titles]; can tolerate a low level of
> work pressure defined as work not requiring
> multitasking, very detailed job tasks,
> significant independent judgment, at production
> rate pace, or teamwork in completing job tasks;
> and can tolerate occasional interaction with

> coworkers, supervisors and no interaction with
> the public.

[Id. at 22 (dkt. no. 11-3 at PageID.53).] The ALJ found that
Plaintiff's impairments could reasonably be expected to cause
the symptoms Plaintiff described, but his testimony about the
intensity, persistence, and limiting effects of his symptoms was
not consistent with the medical evidence and other evidence in
the record. [Id. at 23 (dkt. no. 11-3 at PageID.54).] The ALJ
found that Plaintiff's claimed symptom severity was
"disproportionate to medical, counseling, or mental health
evidence in the record." [Id.]

The ALJ found that the record "reflect[s] a decrease
in symptoms following physical therapy sessions and increased
coping abilities through counseling and mental health treatment
techniques." [Id. at 24 (dkt. no. 11-3 at PageID.55).] The ALJ
acknowledged that, on March 1, 2022, Plaintiff reported that his
tinnitus sounds were as high as sixty decibels, which caused him
to experience anxiety and mania, but the ALJ noted Plaintiff's
"assessment plans included working with a psychiatrist to find a
regimen to help adjust the claimant's mood/outlook and relax
when their tinnitus was at its worst." [Id. (citing Ex. 6F,
p. 3).[3]]

---

[3] Exhibit 6F is Plaintiff's treatment records from the
Capitol Hill Medical in Seattle, Washington, dated from
(. . . continued)

The ALJ also found that Plaintiff's activities of
daily living and the ALJ's observations of Plaintiff during the
hearing were "not entirely consistent" with Plaintiff's account
of the severity and limiting effects of his symptoms:

> Despite the claimant's reported tinnitus, the
> claimant was able to focus sufficiently and long
> enough to drive once a week. Additionally, the
> claimant was able to testify without any
> observable difficulties despite reported ear
> ringing and had no indication of difficulty
> speaking. Although the claimant reported
> difficulties getting along with others, the
> claimant did not engage in any inappropriate
> behaviors and did not have difficulty
> establishing rapport or communicating with the
> undersigned during the hearing.

[Id. at 23 (dkt. no. 11-3 at PageID.54).]

As to the medical records, the ALJ found that there
was "[e]vidence of chronic tinnitus exacerbated by
musculoskeletal tightness and tension and emotional factors,"
and that this supported the limitations that the ALJ ultimately
included in the RFC, but the ALJ found that further restrictions
were not warranted in light of the "evidence of improved
symptoms following physical therapy sessions and the claimant's
ability to identify contributing factors to tinnitus and employ

---

April 10, 2020 to March 24, 2021. [AR at 411-45 (dkt. no. 11-8
at PageID.447-81).] Page 3 is the first page an Office Visit
Note for a March 1, 2022 virtual visit with Vy Chu, M.D.,
F.A.C.P. [AR at 413 (dkt. no. 11-8 at PageID.449).]

mental health treatment techniques." [Id. at 25 (dkt. no. 11-3
at PageID.56).]

         The ALJ found the opinions of Kindra Veith, Au.D., who
had been Plaintiff's audiologist from 2020, to be "partially
persuasive" and "only partially supported and only partially
consistent." See id. at 27 (dkt. no. 11-3 at PageID.58).
Relevant to the instant Appeal, Dr. Veith opined that Plaintiff
"would be off task 20 percent or eight hours of a standard
workweek such that they could not perform simple work tasks; and
an expected absenteeism of 16 hours or more per month." [Id.
(citing Ex. 23F).[4]] The ALJ assessed Dr. Veith's opinions as
follows:

         The assessment restricting the claimant to
         moderate noise intensity is supported by the
         evidence to which the audiologist cited and the
         claimants [sic] tinnitus complaints. However, the
         restrictions related to being off task and
         missing work are not supported given the
         claimant's use of sound therapy and hearing aids
         and decreased tinnitus following physical therapy
         sessions. Those restrictions are also not
         consistent with the record as a whole, which
         includes the claimant's identification of factors
         influencing tinnitus. Factors included personal
         relationships, stress, and musculoskeletal
         tightness. The record indicates the claimant was
         working to address such factors to decrease
         tinnitus and made improvements through
         counseling, mental health treatment, and physical
         therapy. Thus, the assessment is only partially

_____

         [4] Exhibit 23F is a letter, dated June 1, 2023, to Dr. Veith
from Plaintiff's counsel with questions that Dr. Veith was asked
to answer. Dr. Veith certified the answers on June 5, 2023. [AR
at 1088-90 (dkt. no. 11-9 at PageID.1125-27).]

persuasive as the assessed restriction related to
noise intensity is supported and consistent but
restrictions related to being off task and
missing work are not supported and not
consistent.

[Id. at 27-28 (dkt. no. 11-3 at PageID.58-59).]

The ALJ also noted Vy Chu, M.D., F.A.C.P., opined that

the claimant could work only 10 hours per week,
three days per week, remotely, with a flexible
schedule, with the use of sound therapy devices
and sound masking machines available to the
claimant, as loud as 60 decibels. Dr. Chu cited
to ringing in both ears distracting the claimant
from focusing and concentrating on complex work
task and high sensitivity to stress and anxiety
(Ex. 17F, p. 1).[5] On June 5, 2023. Dr. Chu,
assessed the claimant could lift and/or carry up
to 100 pounds or more but found marked and
extreme limitations in paragraph B criteria and
opined the claimant would need unscheduled breaks
and would miss work 16 hours or more per month.
Dr. Chu cited to no effective treatment for the
claimant's tinnitus and acute, non-ignorable,
bilateral and painful ear ringing equivale to 30
to 50 decibels of sounds (Ex. 24F).[6]

[Id. at 27 (dkt. no. 11-3 at PageID.58).] Collectively with the

assessments by Trish Gallant, P.T., and Heather Mine, M.D., the

ALJ found Dr. Chu's assessments were "not persuasive based on

---

[5] Exhibit 17F is a State of Washington Employment Security
Department form letter, dated February 19, 2022, sent to
Plaintiff for his doctor to complete in connection with
Plaintiff's request for unemployment benefits. Dr. Chu certified
the answers on March 17, 2022. [AR at 860-61 (dkt. no. 11-8 at
PageID.896-97).]

[6] Exhibit 24F is a letter, dated May 10, 2023, to Dr. Chu
from Plaintiff's counsel with questions that Dr. Chu was asked
to answer. Dr. Chu certified the answers on June 5, 2023. [AR at
1091-94 (dkt. no. 11-9 at PageID.1128-31).]

factors of supportability and consistency." [Id.] The ALJ

further stated:

> The assessments by Dr. Gallant, Dr. Chu, and
> Dr. Mine are not supported and are an
> underestimation of the claimant's capabilities.
> Although the claimant symptoms of pain, tinnitus,
> and insomnia are documented in the record, the
> record also indicates the claimant's symptoms and
> signs decreased, though not completely resolved,
> following physical therapy and through use of
> mental health treatment techniques. As to
> assessments related to the claimant's mental
> health related symptoms, Dr. Gallant, Dr. Chu,
> and Dr[.] Mine are not qualified mental health
> professionals. The assessments are also not
> consistent with other evidence such as the
> claimant's reports of decreased tinnitus and pain
> following physical therapy session. Thus, the
> assessments are not persuasive as they are not
> support and not consistent.

[Id.]

The ALJ found that Plaintiff had past relevant work as

a sales manager and as an executive assistant, but Plaintiff is

not capable of performing his past relevant work. [Id. at 30

(dkt. no. 11-3 at PageID.61).]

At step five, the ALJ noted that Plaintiff was in the

"younger individual" category on the alleged onset date. [Id.

(citing 20 CFR 404.1563).] Further, Plaintiff has at least a

high school education. [Id. (citing 20 CFR 404.1564).] The ALJ

found that it was irrelevant whether Plaintiff has transferable

job skills because the Medical-Vocational Rules framework

supported a finding that Plaintiff was not disabled, regardless

of whether he had transferable skills. [Id. (citing SSR 82-41;
20 CFR Part 404, Subpart P, Appendix 2).] The ALJ found that,
based on Plaintiff's age, education, work experience, and RFC,
Plaintiff could make a successful adjustment to the following
jobs that exist in significant numbers in the national economy:
automobile detailer, cart attendant, and lab equipment cleaner.
[Id. at 31 (dkt. no. 11-3 at PageID.62).] The ALJ therefore
found that Plaintiff was not under a disability from the alleged
onset date, January 1, 2021, through the date of the Decision.
[Id. at 32 (dkt. no. 11-3 at PageID.45) (citing 20 CFR
404.1520(g)).]

        Plaintiff requested review of the ALJ's decision.
[Exh. 18B, AR at 184-85 (dkt. no. 11-5 at PageID.217-18)
(request for review of Decision, dated 7/10/23).] As previously
noted, the Appeals Council denied Plaintiff's request for
review, making the ALJ's Decision the Commissioner's final
decision. [AC Notice, AR at 1 (dkt. no. 11-3 at PageID.32).]

        In the instant Appeal, Plaintiff argues the Decision
should be reversed because: the ALJ failed to provide sufficient
reasons for the rejection of Plaintiff's testimony and for the
rejection of the opinions of multiple medical sources; and these
errors were not harmless. Plaintiff argues the case should be
remanded for the immediate calculation of benefits or for other
appropriate proceedings. [Opening Brief at 1.] In addition,

Plaintiff seeks an award of attorney's fees and costs incurred in the Appeal. [Id. at 13.]

## STANDARDS

"A district court has jurisdiction pursuant to 42 U.S.C. § 405(g) to review final decisions of the Commissioner of Social Security." Concannon v. Saul, Civ. No. 19-00267-ACK-RT, 2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), *aff'd*, No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021).

## I.    Review of Social Security Decisions

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, in reviewing the Commissioner's decision, this Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error. Id. "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (citation and internal quotation marks omitted). In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole. Id. Where the record, considered as a whole, could support either affirmance or

17

reversal, the district court must affirm the decision. <u>Attmore</u> <u>v. Colvin</u>, 827 F.3d 872, 875 (9th Cir. 2016). To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" <u>Brown-Hunter</u> <u>v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (quoting <u>Treichler</u>, 775 F.3d at 1098).

## II.  <u>Five-Step Analysis</u>

The following analysis applies in cases involving review of the denial of social security disability benefits.

> To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation. <u>See</u> 20 C.F.R. § 404.1520. The burden of proof is on the claimant at steps one through four. <u>See</u> <u>Valentine v. Comm'r of Soc. Sec.</u> <u>Admin.</u>, 574 F.3d 685, 689 (9th Cir. 2009). At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities," <u>Lewis v. Apfel</u>, 236 F.3d 503, 515 (9th Cir. 2001) (citing §§ 404.1571–404.1572, 416.971–416.975). At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," § 404.1520(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," § 404.1522(a); <u>see</u> <u>Webb v. Barnhart</u>, 433 F.3d 683, 686 (9th Cir. 2005).
>
> At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the "Listing of

Impairments" (referred to as the "listings"). See
§ 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404
Subpt. P, App. 1 (pt. A). The listings describe
impairments that are considered "to be severe
enough to prevent an individual from doing any
gainful activity." § 404.1525(a). Each impairment
is described in terms of "the objective medical
and other findings needed to satisfy the criteria
of that listing." § 404.1525(c)(3). "For a
claimant to show that his impairment matches a
listing, it must meet all of the specified
medical criteria. An impairment that manifests
only some of those criteria, no matter how
severely, does not qualify." Sullivan v. Zebley,
493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d
967 (1990) (footnote omitted).[7] If an impairment
does not meet a listing, it may nevertheless be
"medically equivalent to a listed impairment" if
the claimant's "symptoms, signs, and laboratory
findings are at least equal in severity to" those
of a listed impairment. § 404.1529(d)(3). But a
claimant cannot base a claim of equivalence on
symptoms alone. Even if the claimant alleges pain
or other symptoms that makes the impairment more
severe, the claimant's impairment does not
medically equal a listed impairment unless the
claimant has signs and laboratory findings that
are equal in severity to those set forth in a
listing. § 404.1529(d)(3). If a claimant's
impairments meet or equal the criteria of a
listing, the claimant is considered disabled.
§ 404.1520(d).

If the claimant does not meet or equal a
listing, the ALJ proceeds to step four, where the
ALJ assesses the claimant's residual functional
capacity (RFC) to determine whether the claimant
can perform past relevant work, § 404.1520(e),
which is defined as "work that [the claimant has]
done within the past 15 years, that was
substantial gainful activity, and that lasted
long enough for [the claimant] to learn to do
it," § 404.1560(b)(1). If the ALJ determines,

---

[7] Sullivan has been superseded by statute on other grounds.
See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir.
2013).

19

based on the RFC, that the claimant can perform
past relevant work, the claimant is not disabled.
§ 404.1520(f).

At step five, the burden shifts to the
agency to prove that "the claimant can perform a
significant number of other jobs in the national
economy." Thomas v. Barnhart, 278 F.3d 947, 955
(9th Cir. 2002). To meet this burden, the ALJ may
rely on the Medical-Vocational Guidelines found
at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or on the
testimony of a vocational expert. Tackett v.
Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). "[A]
vocational expert or specialist may offer expert
opinion testimony in response to a hypothetical
question about whether a person with the physical
and mental limitations imposed by the claimant's
medical impairment(s) can meet the demands of the
claimant's previous work, either as the claimant
actually performed it or as generally performed
in the national economy." § 404.1560(b)(2). An
ALJ may also use "other resources, such as the
'Dictionary of Occupational Titles' and its
companion volumes and supplements, published by
the Department of Labor." Id.

Throughout the five-step evaluation, the ALJ
"is responsible for determining credibility,
resolving conflicts in medical testimony, and for
resolving ambiguities." Andrews v. Shalala, 53
F.3d 1035, 1039 (9th Cir. 1995).

Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020) (some

alterations in Ford) (footnotes omitted).

## DISCUSSION

## I.    Whether It Was Error to Discount Plaintiff's Testimony

This Court turns first to Plaintiff's argument that

the ALJ erred in discrediting his subjective symptom testimony.

The ALJ found that Plaintiff's statements about the extent and

limiting effects of his tinnitus symptoms were inconsistent with

the record because: the medical records showed improvement after
counseling and mental health treatment; Plaintiff's statements
were inconsistent with his activities of daily living; they were
not supported by the medical records; and they were inconsistent
with the Hearings Officer's personal observations of Plaintiff.
See Decision, AR at 23-24 (dkt. no. 11-3 at PageID.54-55).

> The Ninth Circuit has stated:
>
>> To discredit a claimant's symptom testimony when
>> the claimant has provided objective medical
>> evidence of the impairments which might
>> reasonably produce the symptoms or pain alleged
>> and there is no evidence of malingering, the ALJ
>> must give specific, clear, and convincing reasons
>> for rejecting the testimony by identifying which
>> testimony the ALJ found not credible and
>> explaining which evidence contradicted that
>> testimony.

Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017)
(brackets, emphases, citation, and internal quotation marks
omitted). Further, those reasons must be supported by
substantial evidence. Marsh v. Colvin, 792 F.3d 1170, 1174 n.2
(9th Cir. 2015).

The ALJ found that Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms[,]" [Decision, AR at 23 (dkt. no. 11-3 at PageID.54),]
and the Decision does not contain a finding that Plaintiff is
malingering. The ALJ was therefore required to give specific,
clear, and convincing reasons, supported by substantial

21

evidence, for rejecting Plaintiff's testimony about the extent and limiting effects of his symptoms. The ALJ did give clear and specific reasons in this case. However, this Court finds that those reasons were not supported by substantial evidence.

A.    **Activities of Daily Living**

Contradiction of the claimant's testimony and "meet[ing] the threshold for full-time work[ are] the two grounds [the Ninth Circuit] ha[s] recognized for using daily activities to form a basis of an adverse credibility determination." Smith v. Kijakazi, 14 F.4th 1108, 1114 (9th Cir. 2021) (citing Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007)). The Ninth Circuit has stated:

> Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. See, e.g., Cohen [v. Sec'y of Dep't of Health & Human Servs.], 964 F.2d [524,] 530–31 [(6th Cir. 1992)] (ruling that a claimant should not be penalized for attempting to maintain some sense of normalcy in her life); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). See also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("Many home activities are not easily transferable to . . . the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication.").[8] Only if the level of activity

_____

[8] Fair was superseded on other grounds by Title 20 Code of Federal Regulations Section 404.1502(a). See, e.g., Mata v. Kijakazi, No. 22-35482, 2023 WL 3836421, at *3 (9th Cir. June 6, 2023).

were inconsistent with Claimant's claimed
limitations would these activities have any
bearing on Claimant's credibility.

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (some

alterations in Reddick).

The ALJ found that Plaintiff's ability to drive once a

week was inconsistent with Plaintiff's subjective symptom

testimony. See Decision, AR at 23 (dkt. no. 11-3 at PageID.54).

Plaintiff testified that he only drives to doctor's

appointments, but most of his appointments are telehealth

appointments. He estimated that he drives once a week, and the

appointments are nine or ten miles from his home. See Hrg.

Trans., AR at 46-47 (dkt. no. 11-3 at PageID.77-78). This amount

of driving neither indicates that Plaintiff is capable of

working full-time, nor does it demonstrate an inconsistency with

Plaintiff's testimony about his subjective symptoms and his

limitations. Therefore, it is not relevant to Plaintiff's

credibility. See Reddick, 157 F.3d at 722. The ALJ's reliance on

Plaintiff's driving violates the principle that "[a] claimant

does not need to be utterly incapacitated in order to be

disabled." See Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir.

2017) (citation and internal quotation marks omitted).

**B.  Medical Evidence**

The ALJ found that the medical record contained

"evidence of chronic tinnitus exacerbated by musculoskeletal

23

tightness and tension and emotional factors." [Decision, AR at
25 (dkt. no. 11-3 at PageID.56).] However, the ALJ found that
the medical evidence was inconsistent with Plaintiff's testimony
about the extent and limiting effects of his tinnitus symptoms
because Plaintiff showed improvement from physical therapy
sessions, counseling, and mental health treatment. Id. at 23-24
(dkt. no. 11-3 at PageID.54-55); see also id. at 25 (dkt.
no. 11-3 at PageID.56) ("[E]vidence of improved symptoms
following physical therapy sessions and the claimant's ability
to identify contributing factors to tinnitus and employ mental
health treatment techniques suggest additional or more
restrictive limitations are not warranted.").

        The ALJ cited numerous examples of medical records
showing reduced tinnitus after physical therapy sessions. See
Decision, AR at 24-25 (dkt. no. 11-3 at PageID.55-56) (citing
Exs. 11F, p. 17; Ex. 13F, pp. 1, 5, 7, 11, 19, 21, 29, 31, 33,
37, 45, 47, 49, 63, 65, 67, 71, 73, 75, 77; Ex. 18F, pp. 15, 17,
19; Ex. 20F, p. 65).[9] The Ninth Circuit has stated:

---

        [9] Exhibit 11F is Plaintiff's office treatment records from
Seattle Anxiety Specialists, PLLC for the period from March 9,
2021 to December 1, 2021 ("SAS Records"). [AR at 670-700 (dkt.
no. 11-8 at PageID.706-36).] Exhibit 13F is Plaintiff's
physical/occupational therapy records from Therapydia – Kona for
the period from March 31, 2021 to April 29, 2022 ("Therapydia
Records"). [AR at 702-809 (dkt. no. 11-8 at PageID.738-845).]
Exhibit 18F is Plaintiff's physical/occupational therapy records
from Gallant Physical Therapy, dated from September 16, 2021 to
                                              (. . . continued)

As we have emphasized while discussing
mental health issues, it is error to reject a
claimant's testimony merely because symptoms wax
and wane in the course of treatment. Cycles of
improvement and debilitating symptoms are a
common occurrence, and in such circumstances it
is error for an ALJ to pick out a few isolated
instances of improvement over a period of months
or years and to treat them as a basis for
concluding a claimant is capable of working. See,
e.g., Holohan v. Massanari, 246 F.3d 1195, 1205
(9th Cir. 2001) ("[The treating physician's]
statements must be read in context of the overall
diagnostic picture he draws. That a person who
suffers from severe panic attacks, anxiety, and
depression makes some improvement does not mean
that the person's impairments no longer seriously
affect her ability to function in a workplace.").
Reports of "improvement" in the context of mental
health issues must be interpreted with an
understanding of the patient's overall well-being
and the nature of her symptoms. See Ryan [v.
Comm'r of Soc. Sec.], 528 F.3d [1194,] 1200-01
[(9th Cir. 2008)] ("Nor are the references in [a
doctor's] notes that Ryan's anxiety and
depression were 'improving' sufficient to
undermine the repeated diagnosis of those
conditions, or [another doctor's] more detailed
report."). They must also be interpreted with an
awareness that improved functioning while being
treated and while limiting environmental
stressors does not always mean that a claimant
can function effectively in a workplace. See,
e.g., Hutsell [v. Massanari], 259 F.3d [707,] 712
[(8th Cir. 2001)] ("We also believe that the
Commissioner erroneously relied too heavily on
indications in the medical record that Hutsell
was 'doing well,' because doing well for the
purposes of a treatment program has no necessary

---

April 6, 2022 ("Gallant PT Records"). [AR at 862-83 (dkt.
no. 11-8 at PageID.898-919).] Exhibit 20F is Plaintiff's
physical/occupational therapy records from South Kona Physical
Therapy, dated from November 15, 2022 to May 2, 2023 ("SKPT
Records"). [AR 890-955 (dkt. no. 11-9 at PageID.927-92.]

             relation to a claimant's ability to work or to
             her work-related functional capacity."). . . .

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) (some

alterations in Garrison) (footnotes omitted). Although tinnitus

is not a mental health condition, the analysis in Garrison is

applicable to the instant case because, as the ALJ noted,

Plaintiff's tinnitus was exacerbated by emotional issues, the

tinnitus symptoms caused Plaintiff to experience anxiety and

mania, and mental health treatment techniques were part of

Plaintiff's management of his tinnitus. See Decision, AR at 24-

25 (dkt. no. 11-3 at PageID.55-56).

        The ALJ was correct that multiple physical therapy

records stated that Plaintiff experienced an improvement in his

tinnitus symptoms after a therapy session. See, e.g., Exh. 13F

(Therapydia Records) at 77 (6/30/21 Daily Note/Billing Sheet, AR

at 778 (dkt. no. 11-8 at PageID.814)) ("Tinnitus was less after

session today."); id. at 65 (8/11/21 Daily Note/Billing Sheet,

AR at 766 (dkt. no. 11-8 at PageID.802)) (noting "improved

tinnitus after treatment"); id. at 47 (11/11/21 Daily

Note/Billing Sheet, AR at 748 (dkt. no. 11-8 at PageID.784))

("Improve[d] tinnitus with treatment with noted thoracic spine

tone increase."); id. at 31 (1/14/22 Daily Note/Billing Sheet,

AR at 732 (dkt. no. 11-8 at PageID.768)) ("Tinnitus and pain

decreased with todays [sic] treatment."); Exh. 18F at 19 (SOAP

Note for 10/18/21 appointment, AR at 880 (dkt. no. 11-8 at
PageID.916)) ("He noted decreased tinnitus . . . following
today's session.").

However, some of the records noting improvement after
the session also indicate that the improvement was temporary and
was not an indication of improvement in Plaintiff's symptoms
between sessions. See, e.g., Exh. 13F (Therapydia Records) at 49
(11/4/21 Daily Note/Billing Sheet, AR at 750 (dkt. no. 11-8 at
PageID.786)) ("Pt notes symptoms persist from last session with
increased tinnitus . . . ."); id. at 37 (12/22/21 Daily
Note/Billing Sheet, AR at 738 (dkt. no. 11-8 at PageID.774))
("Tinnitus remains unchanged from last session . . . ."); id. at
29 (1/21/22 Daily Note/Billing Sheet, AR at 730 (dkt. no. 11-8
at PageID.766)) ("Pt continues to require skilled care to manage
town and TMJ issues that increase tinnitus."). All of the notes
from the Therapydia Records that the ALJ cites as showing
improvement after sessions list among Plaintiff's current
complaints "tinnitus that is having a profound impact on
[Plaintiff's quality of life]." See Exh. 13 at 1, 5, 7, 11, 19,
21, 29, 31, 33, 37, 45, 47, 49, 63, 65, 67, 71, 73, 75, 77 (AR
at 702, 706, 708, 712, 720, 722, 730, 732, 734, 738, 746, 748,
750, 764, 766, 768, 772, 774 (dkt. no. 11-8 at PageID.738,
PageID.742, PageID.744, PageID.748, PageID.756, PageID.758,
PageID.766, PageID.768, PageID.770, PageID.774, PageID.782,

27

PageID.784, PageID.786, PageID.800, PageID.802, PageID.804,
PageID.808, PageID.810, PageID.812, PageID.814)). Further, all
of those records stated that one of Plaintiff's long term
treatment goals was "[p]ain and tinnitus to 6/10 at worst and
0/10 at best," but the records show limited progress of forty or
fifty percent toward the goal. See id.

The reports of Plaintiff's improvement immediately
after physical therapy sessions, when viewed in the context of
his "overall well-being and the nature of [his] symptoms," see
Garrison, 759 F.3d at 1017, do not contradict Plaintiff's
testimony about the extent and limiting effects of his tinnitus
symptoms.

The ALJ noted that, on April 6, 2021, Plaintiff
reported that there were times that he was "able to ignore [his
tinnitus] with a better mindset." [Decision, AR at 24 (dkt.
no. 11-3 at PageID.55) (citing Ex. 11F, p. 11).] The cited note
documented Plaintiff's report that "it [was] easiest to ignore
it when he has spent time in a mindful yoga class (or even video
games)." [Exh. 11F (SAS Records) at 11 (DAP Note for 4/6/21
appointment, AR at 680 (dkt. no. 11-8 at PageID.716)).] The fact
that Plaintiff reported being sometimes able to ignore his
symptoms does not necessarily mean his tinnitus did not have a
serious effect on his ability to function. Further, this note is
consistent with Plaintiff's testimony that mindfulness

28

techniques are some of the soothing behaviors he engages in to
manage his tinnitus symptoms. See Hrg. Trans., AR at 56 (dkt.
no. 11-3 at PageID.87).

        Similarly, the fact that Plaintiff worked with a
psychiatrist develop ways to manage his "mood/outlook and relax
when their tinnitus was at its worst," [Decision, AR at 24 (dkt.
no. 11-3 at PageID.55) (citing Ex. 6F, p. 3),] and the fact that
Plaintiff attempted to identify "personal issues, diet, and
musculoskeletal tension and tightness" that caused increases in
his tinnitus symptoms, [id. at 24-25 (dkt. no. 11-3 at
PageID.55-56),] do not contradict Plaintiff's testimony about
the extent and limiting effects of his tinnitus symptoms.

        This Court therefore finds that there is no
substantial evidence to support the ALJ's finding of
inconsistencies between the medical record and Plaintiff's
testimony about the extent and limiting effects of his tinnitus
symptoms.

        C.    **ALJ's Observation of Plaintiff**

        The ALJ also found that Plaintiff's subjective symptom
testimony was inconsistent with the ALJ's observations of
Plaintiff during the hearing because Plaintiff appeared to
testify without difficulty, "did not engage in any inappropriate
behaviors[,] and did not have difficulty establishing rapport or
communicating with the [ALJ] during the hearing." [Decision, AR

at 23 (dkt. no. 11-3 at PageID.54).] While the ALJ's

observations are important and insightful,

> [t]he ALJ's observations of a claimant's
> functioning may not form the sole basis for
> discrediting a person's testimony. See S.S.R. 96-
> 7p at 8 ("[T]he adjudicator is not free to accept
> or reject the individual's complaints solely on
> the basis of . . . personal observations."),
> *available at* 61 Fed. Reg. at 34,488. Instead, an
> ALJ's personal observations may be used only in
> "the overall evaluation of the credibility of the
> individual's statements." Id.

Orn, 495 F.3d at 639 (alterations in Orn). Because the ALJ's

other reasons for rejecting Plaintiff's subjective symptom

testimony fail, the ALJ's personal observations alone cannot

support the ALJ's adverse credibility finding.

        This Court finds that the ALJ failed to provide

specific, clear, and convincing reasons, supported by

substantial evidence, for rejecting Plaintiff's testimony about

the extent and limiting effects of his tinnitus symptoms .

## II.  **Failure to Consider Medical Opinions**

        This Court next turns to Plaintiff's argument that the

ALJ improperly rejected the medical opinions of Dr. Veith and

Dr. Chu. See Opening Brief at 10-11; see also Decision, AR at

27-28 (dkt. no. 11-3 at PageID.58-59) (discussing Dr. Veith's

assessment of Plaintiff and finding it partially persuasive);

id. at 27 (dkt. no. 11-3 at PageID.58) (discussing the

assessments by Dr. Gallant, Dr. Chu, and Dr. Mine and finding

them not persuasive).

Title 20 Code of Federal Regulations

Section 404.1520c, which governs claims filed on or after

March 27, 2017, states the Social Security Administration

> will not defer or give any specific evidentiary
> weight, including controlling weight, to any
> medical opinion(s) or prior administrative
> medical finding(s), including those from your
> medical sources. When a medical source provides
> one or more medical opinions or prior
> administrative medical findings, we will consider
> those medical opinions or prior administrative
> medical findings from that medical source
> together using the factors listed in paragraphs
> (c)(1) through (c)(5) of this section, as
> appropriate. The most important factors we
> consider when we evaluate the persuasiveness of
> medical opinions and prior administrative medical
> findings are supportability (paragraph (c)(1) of
> this section) and consistency (paragraph (c)(2)
> of this section)).

20 C.F.R. § 404.1520c(a).

As to supportability, Section 404.1520c(c)(1) states:

"The more relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or

her medical opinion(s) . . . , the more persuasive the medical

opinions . . . will be." As to consistency, Section

404.1520c(c)(2) states: "The more consistent a medical

opinion(s) . . . is with the evidence from other medical sources

and nonmedical sources in the claim, the more persuasive the

medical opinion(s) . . . will be." Under these regulations, "an

ALJ's decision, including the decision to discredit any medical
opinion, must simply be supported by substantial evidence."
Woods v. Kijakazi, 32 F.4th 785, 787 (9th Cir. 2022).

###    A.    Dr. Veith

Dr. Veith opined that Plaintiff was limited to jobs
with no more than a moderate noise level because "[l]oud sounds
can exacerbate tinnitus." [Exh. 23F, AR at 1089 (dkt. no. 11-9
at PageID.1126).] The ALJ found that this limitation was
supported for the reason that Dr. Veith cited and the limitation
was supported by Plaintiff's testimony about his tinnitus
symptoms. See Decision, AR at 27 (dkt. no. 11-3 at PageID.58).

Dr. Veith also opined that Plaintiff's tinnitus
symptoms would cause him to be off-task for twenty percent of a
forty-hour work and to be absent from work for sixteen hours or
more per month. See Exh. 23F, AR at 1090 (dkt. no. 11-9 at
PageID.1127). Dr. Veith gave the following explanation for these
opinions: "Mr. Schaus's tinnitus significantly impacts his
quality of life and ability to focus or concentrate. He
experiences great emotional distress." [Id.] The ALJ found that
Dr. Veith's opinions about Plaintiff being off-task or absent
were not supported by, and were inconsistent with, the record
before the ALJ. See Decision, AR at 27-28 (dkt. no. 11-3 at
PageID.58-59). The ALJ cited: Plaintiff's use of sound therapy
and hearing aids to mitigate his symptoms; the improvement in

32

Plaintiff's symptoms following physical therapy sessions; and
Plaintiff's attempts to manage factors, such as stress, that
exacerbated his tinnitus. See id.

It is undisputed that Plaintiff used external sound
therapy, wore hearing aids, had physical therapy, and underwent
other types of treatments to minimize or cope with his tinnitus
symptoms. The dispute in this case concerns the effectiveness of
these therapies and treatments. The ALJ's findings that
Dr. Veith's off-task and absenteeism opinions were not supported
and inconsistent must be upheld if the findings were supported
by substantial evidence. See Woods, 32 F.4th at 787. Under the
substantial evidence standard, "[e]ven when the evidence is
susceptible to more than one rational interpretation, [a court]
must uphold the ALJ's findings if they are supported by
inferences reasonably drawn from the record." Molina v. Astrue,
674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted).[10] Even
considering the analysis above regarding the temporary relief of
tinnitus symptoms after physical therapy sessions, see supra
Discussion Section I.B, the evidence in this case is susceptible
to more than one rational interpretation concerning the
effectiveness of the therapies and treatments that Plaintiff

---

[10] Molina was superseded by regulation on other grounds.
See, e.g., Amalia F. v. King, Case No. 5:24-CV-01469-JDE, 2025
WL 372100, at *2 (C.D. Cal. Jan. 31, 2025) (citing Smith v.
Kijakazi, 14 F.4th 1108, 1111 (9th Cir. 2021)).

used. Because the ALJ's interpretation of the evidence in the analysis of Dr. Veith's opinions is one rational interpretation, and it is supported by reasonable inferences from the record, the ALJ's analysis must be upheld.

This Court therefore rejects Plaintiff's argument that the ALJ erred by concluding that Dr. Veith's off-task and absenteeism opinions were not persuasive.

**B.**    **Dr. Chu**

Plaintiff argues the ALJ's analysis of Dr. Chu's opinions was deficient because the ALJ discussed Dr. Chu's opinions collectively with the opinions of Dr. Gallant and Dr. Mine. [Opening Brief at 11.] The Social Security Administration's regulations state that:

> Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), **we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis** using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1). The Ninth Circuit has stated that
the Social Security Administration decision "must 'articulate
. . . how persuasive' it finds 'all of the medical opinions'
from each doctor or other source, 20 C.F.R. § 404.1520c(b), and
'explain how [it] considered the supportability and consistency
factors' in reaching these findings, <u>id.</u> § 404.1520c(b)(2)."
<u>Woods</u>, 32 F.4th at 792 (alterations in <u>Woods</u>).

      In the instant case, after stating a collective ruling
that the "assessments by Trish Gallant, P.T., D.P.T., Vy X. Chu,
and Heather Mine, M.D. [were] not persuasive based on factors of
support and consistency," the ALJ provided individual
discussions of Dr. Chu's opinions. <u>See</u> Decision, AR at 27 (dkt.
no. 11-3 at PageID.58). This Court therefore rejects Plaintiff's
argument that the ALJ erred by failing to conduct a separate
analysis of Dr. Chu's opinions.

      Plaintiff has failed to establish any error in the
ALJ's consideration of the medical opinions.

**III.  <u>Whether the Error Was Harmless</u>**

      This Court has concluded that the ALJ erred by
rejecting Plaintiff's subjective testimony about the extent and
limiting effects of his tinnitus symptoms. This Court cannot
find that the ALJ would have made the same RFC finding if the
ALJ had properly considered Plaintiff's subjective symptom
testimony. It is reasonably likely that the ALJ would have made

a more restrictive RFC finding and may have ultimately concluded
that Plaintiff was disabled.

This Court therefore finds that that the ALJ's errors
were not harmless. See Treichler, 775 F.3d at 1099 ("An error is
harmless if it is 'inconsequential to the ultimate nondisability
determination.'" (quoting Alaska Dep't of Envtl. Conserv. v.
EPA, 540 U.S. 461, 497, 124 S. Ct. 983, 157 L. Ed. 2d 967
(2004))).

In light of this Court's rulings, the ALJ's ultimate
ruling that Plaintiff was not disabled was not supported by
substantial evidence. To the extent that Plaintiff's Appeal
raises arguments which are not specifically addressed in this
Order, it is not necessary for this Court to reach those
arguments. This Court makes no findings or conclusions regarding
those arguments. Plaintiff's Appeal is granted insofar as the
ALJ's Decision, including the ruling that Plaintiff is not
disabled, is reversed.

## IV.    Scope of Remand

Plaintiff argues this case should be remanded solely
for the calculation of benefits because, if his testimony is
credited, a finding that he is disabled would be required
because of the VE's testimony that someone with the limitations
that Plaintiff described in his testimony could not sustain

36

competitive employment. See Opening Brief at 13. The Ninth

Circuit has stated that,

> when "the record before the agency does not
> support the agency action, . . . the agency has
> not considered all relevant factors, or . . . the
> reviewing court simply cannot evaluate the
> challenged agency action on the basis of the
> record before it, the proper course, except in
> rare circumstances, is to remand to the agency
> for additional investigation or explanation."
> Fla. Power & Light Co. v. Lorion, 470 U.S. 729,
> 744, 105 S. Ct. 1598, 84 L. Ed. 2d 643 (1985).
> The Supreme Court has referred to this remand
> requirement as the "ordinary 'remand' rule."
> Gonzales v. Thomas, 547 U.S. 183, 185, 126 S. Ct.
> 1613, 164 L. Ed. 2d 358 (2006) (internal
> quotation marks omitted).

Treichler, 775 F.3d at 1099 (alterations in Treichler) (footnote

omitted). The ordinary remand rule applies in social security

cases. Id. The Ninth Circuit will "generally remand for an award

of benefits only in rare circumstances, where no useful purpose

would be served by further administrative proceedings and the

record has been thoroughly developed." Id. at 1100 (citations

and internal quotation marks omitted).

> The decision to depart from the ordinary remand
> rule and instead remand for an award of benefits
> is made pursuant to a three-step analysis under
> the "credit-as-true" rule. See [Treichler, 775
> F.3d] at 1100-01. First, the Court asks whether
> the ALJ failed to provide sufficient reasons for
> rejecting evidence and, second, if he did, the
> Court determines whether the record has been
> fully developed or if there are matters that must
> be resolved in order to make a benefits
> determination. See id. If the record has not been
> developed thoroughly, or if there are
> inconsistencies, conflicts, or gaps in the

> record, then a remand for further administrative
> proceedings is necessary. <u>See</u> <u>Leon v. Berryhill</u>,
> 880 F.3d 1041, 1047 (9th Cir. 2017). If there are
> no outstanding issues and further proceedings
> would not be useful, the Court can find relevant
> testimony credible as a matter of law. <u>See</u>
> <u>Treichler</u>, 775 F.3d at 1101.

<u>Suzuki v. Saul</u>, CIVIL NO. 19-00390 JAO-RT, 2020 WL 2112120, at

*3 (D. Hawai`i May 4, 2020).

    In this case, the ALJ did not provide sufficient

reasons for the rejection of Plaintiff's subjective symptom

testimony. However, the record is not fully developed as to the

issue of whether Plaintiff would be able to maintain competitive

employment if he were permitted additional breaks and if he were

to use his external sound-therapy devices. <u>See</u> Hrg. Trans., AR

at 66 (dkt. no. 11-3 at PageID.97). Therefore, further

proceedings are necessary on remand to determine whether

Plaintiff is disabled. Plaintiff's request to remand solely for

the determination of benefits must be denied.

**V.    <u>Request for Attorney's Fees and Costs</u>**

    Finally, Plaintiff requests an award of reasonable

attorney's fees and costs, pursuant to Title 28 United States

Code 2412(d). [Opening Brief at 13.] Section 2412(d)(1)(A)

states:

> Except as otherwise specifically provided by
> statute, a court shall award to a prevailing
> party other than the United States fees and other
> expenses, in addition to any costs awarded
> pursuant to subsection (a), incurred by that

party in any civil action (other than cases
sounding in tort), including proceedings for
judicial review of agency action, brought by or
against the United States in any court having
jurisdiction of that action, unless the court
finds that the position of the United States was
substantially justified or that special
circumstances make an award unjust.

This district court has stated:

The Equal Access to Justice Act authorizes
fee-shifting to a prevailing plaintiff in an
appeal from a decision by the Social Security
Administration under specific circumstances.
Hardisty v. Astrue, 592 F.3d 1072, 1076 (9th Cir.
2010).

Attorneys' fees are not available to the
prevailing plaintiff if the position asserted by
the United States was "substantially justified."
Flores v. Shalala, 49 F.3d 562, 567 (9th Cir.
1995) (quoting 28 U.S.C. § 2412(d)(1)). The
burden rests with the Government to establish
that its position was substantially justified.
Hardisty, 592 F.3d at 1076 n.2.

The Ninth Circuit Court of Appeals has held
that district courts should focus on whether the
government's position on the particular issue on
which the claimant earned remand was
substantially justified, not on whether the
government's ultimate disability determination
was substantially justified. Id. at 1078.
Substantial justification for the purposes of the
Equal Access to Justice Act "does not mean
'justified to a high degree,' but simply entails
that the government must show that its position
meets the traditional reasonableness standard—
that it is 'justified in substance or in the
main,' or 'to a degree that could satisfy a
reasonable person.'" Corbin v. Apfel, 149 F.3d
1051, 1052 (9th Cir. 1998) (quoting Pierce v.
Underwood, 487 U.S. 552, 565 (1988)).

. . . .

39

The Government's position is "substantially
justified" when the position has a "reasonable
basis in law and fact." <u>Pierce</u>, 487 U.S. at 566
n.2. A position can be substantially justified
pursuant to the Equal Access to Justice Act even
when the position is ultimately incorrect. <u>Id.</u>
The test for determining whether a position was
substantially justified focuses on whether "a
reasonable person could think it correct." A
position is substantially justified if there is a
genuine dispute between reasonable minds. <u>Id.</u>

Substantially justified does not require
anything more than reasonableness. <u>Id.</u> The
substantially justified standard is a "middle
ground between an automatic award of fees and an
award only where the government's position was
frivolous." <u>Cornella v. Schweiker</u>, 728 F.2d 978,
982 (8th Cir. 1984) (citing H.R. Rep. No. 1418,
96th Cong., 2d Sess. 14 in 1980 U.S. Code Cong. &
Ad. News 4993).

<u>Diesta v. Saul</u>, CIVIL NO. 15-00465 HG-RT, 2020 WL 978604, at *3

(D. Hawai`i Feb. 28, 2020), *aff'd sub nom.* <u>Diesta v. Kijakazi</u>,

No. 20-15729, 2022 WL 636636 (9th Cir. Mar. 4, 2022).

The ALJ's reliance on Plaintiff's driving to doctor's

appointments once a week to support the rejection of Plaintiff's

subjective symptom testimony did not have a reasonable basis in

law and fact. <u>See</u> Decision, AR at 23 (dkt. no. 11-3 at

PageID.54); *supra* Discussion I.A. Thus, the Commissioner's

defense of the ALJ's credibility analysis on Appeal was not

substantially justified. <u>See</u> Answering Brief at 2 & n.2. This

Court therefore concludes that Plaintiff is entitled to an award

of attorney's fees and costs associated with this Appeal.

Plaintiff is directed to file a motion seeking a
determination of the amount of the award. Plaintiff's motion
must comply with the applicable requirements of Local Rule 54.2,
and the motion will be referred to the magistrate judge in the
normal course.

## CONCLUSION

For the foregoing reasons, Plaintiff's appeal from the
Administrative Law Judge's July 10, 2023 Decision is HEREBY
GRANTED IN PART AND DENIED IN PART. The Appeal is: GRANTED as to
Plaintiff's challenge to the ALJ's rejection of Plaintiff's
statements about the extent and limiting effects of his tinnitus
symptoms; DENIED as to Plaintiff's challenge to the ALJ's
assessment of the opinions of Dr. Veith and Dr. Chu; GRANTED
insofar as the ALJ's Decision is REVERSED and the case is
REMANDED to the ALJ for further proceedings consistent with the
instant Order; DENIED as to Plaintiff's request to remand the
case solely for a determination of benefits; and GRANTED insofar
as Plaintiff's entitled to an award of reasonable attorney's
fees and costs pursuant to Title 28 United States Code
Section 2412(d)(1)(A).

The Clerk's Office is DIRECTED to enter judgment and
close on **April 14, 2025.** This district court shall retain
jurisdiction over the collateral issue of the amount of the
Section 2412(d)(1)(A) award.

41

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 28, 2025.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

PHILLIP GREGORY SCHAUS VS. MARTIN O'MALLEY, COMMISSIONER OF
SOCIAL SECURITY; CV 24-00186 LEK-RT; ORDER:  GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S APPEAL; REVERSING THE
ADMINISTRATIVE LAW JUDGE'S DECISION; AND REMANDING THE CASE FOR
FURTHER PROCEEDINGS